Filed 6/18/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHARLES COHEN et al., | B330202 |
| Petitioners; | Los Angeles County Super. Ct. No. 22SMCV00736 |
| v. | |
| SUPERIOR COURT OF LOS ANGELES COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | |
| THOMAS SCHWARTZ, Individually and as Trustee, etc., et al., | NO CHANGE IN JUDGMENT |
| Real Parties in Interest. | |

THE COURT*

The opinion filed on June 5, 2024, in the above-titled matter is ordered MODIFIED as follows:

In the second sentence of the final paragraph on page 13, which carries over to page 14, the word "perfunctory" is deleted.

There is no change in judgment.

---

*CURREY, P. J.          COLLINS, J.          ZUKIN, J.

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| CHARLES COHEN et al., Petitioners; v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THOMAS SCHWARTZ, Individually and as Trustee, etc., et al., Real Parties in Interest. | B330202 Los Angeles County Super. Ct. No. 22SMCV00736 |

ORIGINAL PROCEEDINGS in mandate. Lisa Sepe-Wiesenfeld, Judge. Petition granted.

Complex Appellate Litigation Group, Rex S. Heinke, Jessica Weisel; Kozberg & Bodell and Joel Kozberg, for Petitioners.

No appearance for Respondent.

Turner Law Firm, Keith J. Turner and Justin Escano for Real Parties in Interest.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Scott Marcus, Chief Assistant City Attorney, Shaun Dabby Jacobs, Supervising Assistant City Attorney, and Michael M. Walsh, Deputy City Attorney, for City of Los Angeles and the League of California Cities as Amici Curiae.

## INTRODUCTION

Government Code,[1] section 36900, subdivision (a) provides: "Violation of a city ordinance is a misdemeanor unless by ordinance it is made an infraction. The violation of a city ordinance may be prosecuted by city authorities in the name of the people of the State of California, *or redressed by civil action*." (Italics added.) Is the right to redress violations of municipal ordinances by filing a civil suit under section 36900 limited to officials of the city that enacted those ordinances? Or does the italicized phrase confer upon anyone and everyone, including all private citizens, the right to redress violations of municipal ordinances by filing suit against alleged violators? Over 20 years ago, in *Riley v. Hilton Hotels Corp.* (2002) 100 Cal.App.4th 599 (*Riley*), a different panel of this court briefly considered the question and summarily concluded that anyone can sue to redress violations of municipal ordinances.

Arguing *Riley* was wrongly decided, Charles Cohen and Katyna Cohen (collectively, the Cohens) petition for a writ of mandate directing the trial court to: (1) vacate the portion of its order overruling their demurrer to the second and third causes of action asserted in the complaint filed by the Cohens' neighbors, Thomas Schwartz and Lisa Schwartz (collectively, the Schwartzes); and (2) enter an order sustaining their demurrer to these causes of action without leave to amend. By way of these causes of action, the Schwartzes seek redress for the Cohens' maintenance of landscaping and hedges on their property in alleged violation of certain provisions of the Los Angeles Municipal Code (LAMC).

---

1    Unless otherwise indicated, all statutory references are to the Government Code.

As discussed below, we agree with the Cohens that *Riley*'s interpretation of section 36900, subdivision (a) is incorrect. Having reviewed the statute's plain language and legislative history, we conclude the Legislature only intended section 36900 to grant city authorities—not all private parties—the right to redress violations of municipal ordinances via either criminal prosecution or civil action. We also conclude the doctrine of stare decisis does not prevent us from reexamining and disagreeing with *Riley*. Thus, we overrule *Riley* and disavow its recognition of a private right of action by members of the general public under section 36900, subdivision (a). We therefore will issue a peremptory writ of mandate as requested by the Cohens.

To be clear, we hold only that section 36900 does not authorize private parties to bring civil suits to enforce local ordinances. We do not disturb caselaw recognizing that, in some instances, a defendant's violation of a local ordinance may be relevant to, or provide an element of, some other cause of action by a private party, such as nuisance or public nuisance.

## BACKGROUND

The Schwartzes and the Cohens own homes in Los Angeles, located directly across the street from each other. In their complaint, the Schwartzes allege trees and plants in the Cohens' yard exceed height limits specified in LAMC section 12.22, subdivision (C)(20). The complaint also alleges that, without first obtaining the requisite permits, the Cohens removed trees and plants from the parkway fronting their property and replaced them with landscaping non-compliant with the Residential Parkway Landscaping Guidelines adopted by the Los Angeles Board of Public Works, in violation of LAMC section 62.129. According to the Schwartzes, the Cohens' landscaping

3

unreasonably interferes with the Schwartzes' use and enjoyment of their property, negatively impacts their property's value, and causes them to suffer severe annoyance, discomfort, and distress.

Based on these allegations, the complaint asserts four causes of action: (1) nuisance; (2) violation of LAMC section 12.22, subdivision (C); (3) violation of LAMC section 62.129; and (4) declaratory relief. With respect to the second and third causes of action, the complaint alleges: "Under Government Code section 36900, a violation of a city ordinance may be redressed by civil action [citing *Riley*]. Plaintiffs are affected private individuals who seek to redress Defendants' violation with this action." (Italics omitted.) The Schwartzes seek compensatory damages, punitive damages, injunctive relief, declaratory relief, and attorneys' fees and costs.

The Cohens demurred to each of the causes of action asserted in the complaint, arguing the Schwartzes failed to state sufficient facts to constitute a cause of action. Following a hearing, the trial court issued an order sustaining the demurrer to the first and fourth causes of action with leave to amend, and overruling the demurrer to the second and third causes of action.

With respect to the first cause of action, the trial court observed the Schwartzes "fail[ed] to allege specific facts describing how [the Cohens'] conduct has compromised [their] ability to use and enjoy their property." It therefore concluded the complaint did not plead sufficient facts to state a cause of action for public or private nuisance.

Regarding the second and third causes of action, the trial court declined the Cohens' invitation to depart from *Riley*. Instead, noting the absence of authority to the contrary, the court applied *Riley* to conclude the Schwartzes "may assert private

4

causes of action for violations of the Los Angeles Municipal Code as alleged [in their complaint]."

Finally, the trial court determined the Schwartzes' claim for declaratory relief was duplicative of their other causes of action and, thus, was subject to demurrer.

The Schwartzes filed a first amended complaint, which does not reassert their claims for nuisance or declaratory relief. Instead, it only asserts two causes of action: (1) violation of LAMC section 12.22, subdivision (C)(2); and (2) violation of LAMC section 62.169. Again, for both claims, the Schwartzes allege they are entitled to seek redress for the Cohens' violations of the LAMC based on section 36900 and *Riley*.

The Cohens filed a petition for writ of mandate in this court. In response, the Schwartzes filed a preliminary and supplemental preliminary opposition. The Cohens filed a preliminary reply.

This court issued an order directing the trial court to show cause "why a peremptory writ of mandate should not issue directing [it] to vacate [its] order overruling [the Cohens'] demurrer to [the Schwartzes'] causes of action to enforce provisions of the Los Angeles Municipal Code and to issue a new order sustaining the demurrer on the ground that, contrary to the holding in *Riley* . . . , Government Code section 36900, subdivision (a) does not create a private right of action." Thereafter, the Schwartzes filed a return, to which the Cohens filed a reply.[2]

---

2     Because the return does not contain a demurrer or a verified answer, as required by California Rules of Court, rule 8.487(b)(1) and Code of Civil Procedure section 1089, the Cohens assert it should be stricken. (See Cal. Rules of Court, rule

We invited the City of Los Angeles and the League of California Cities (collectively, the City Amici) to file briefs as amici curiae to address the issues presented in this case, namely: (1) whether section 36900, subdivision (a) authorizes a private right of action to enforce municipal ordinances; and (2) whether this court should decline to revisit *Riley* due to the doctrine of stare decisis. Subsequently, the City Amici filed a joint amicus brief largely agreeing with the arguments presented in the Cohens' briefs. The City Amici also note they "were completely unaware of the case [pending in this court]" until we invited them to submit amicus briefs.[3]

## DISCUSSION

### I. The Schwartzes' Motion to Dismiss

Preliminarily, we address the Schwartzes' motion to dismiss the Cohens' petition. The Schwartzes contend dismissal is required because: (1) the present case is moot, as they "wish to dismiss their case [against the Cohens] in the Superior Court";

---

8.487(b)(1) [where an order to show cause is issued, "any real party in interest . . . may serve and file a return by demurrer, verified answer, or both"]; see also Code Civ. Proc., § 1089 ["the party upon whom the writ or notice has been served may make a return by demurrer, verified answer or both"].) While we decline to strike the return, we will deem the factual allegations in the Cohens' petition true because the Schwartzes failed to answer or file a demurrer to the petition. (*Dorsey v. Superior Court* (2015) 241 Cal.App.4th 583, 589.)

3      We grant the City Amici's request for judicial notice. We deny Fay Arfa's application to file an amicus brief.

6

and (2) this court lacks jurisdiction to grant the writ and issue the Cohens' requested relief. We address each point in turn.

## A.     Mootness

"A case is considered moot when 'the question addressed was at one time a live issue in the case' but has been deprived of life 'because of events occurring after the judicial process was initiated.' [Citation.] 'The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief.' [Citation.] However, '[w]hen a question of general public concern is involved, . . . a reviewing court may reject mootness as a bar to a decision on the merits of an issue. [Citation.] Thus, a reviewing court has "inherent discretion" to resolve an issue of broad public interest that is likely to recur, even though an event occurring during the pendency of the case would normally render the matter moot.'" (*Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108, 1121-1122.)

As noted above, the Schwartzes argue that "this case is moot because [they] wish to dismiss their case in the Superior Court." This "wish" is insufficient to moot the case, however, because, while the Schwartzes may want to dismiss the underlying action, they have yet to do so. Unless and until the Schwartzes act upon their intention, we can "'grant [the Cohens] . . . effectual relief'" by issuing the requested writ of mandate. (*Hernandez-Valenzuela v. Superior Court*, *supra*, 75 Cal.App.5th at p. 1121.) Therefore, the Cohens' writ petition is not moot. (See *ibid.*)

In any event, even if the Schwartzes had dismissed the underlying case, we would exercise our discretion to resolve the issues presented in this case. The key question before us is of significant public interest, as it bears upon whether section

36900, subdivision (a) confers upon *all* private citizens—as opposed to only city authorities—the right to enforce municipal ordinances by filing a lawsuit against an alleged violator. The Cohens have shown this issue is likely to recur by presenting undisputed evidence demonstrating some citizens have relied on section 36900, subdivision (a) to seek redress for alleged violations of municipal ordinances in the past and therefore may continue to do so in the future. Consequently, even if the Schwartzes had dismissed the underlying action, we would decline to dismiss the writ petition as moot.

### B.    Jurisdiction

The Schwartzes contend we lack jurisdiction to issue the requested writ for two reasons. First, relying on *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, they argue that writ review is inappropriate because an order overruling a demurrer "may be reviewed on an appeal from the final judgment [citations], and . . . such an appeal is normally presumed to be an adequate remedy at law, thus barring immediate review by extraordinary writ."

But writ review is appropriate here. "Even though a trial court's order overruling a demurrer is subject to review on appeal from the final judgment, an appellate court has the option to review such an order prior to final judgment through writ of mandate. [Citation.] However, writ review is appropriate only when (1) 'the remedy by appeal would be inadequate' [citation] or (2) the writ presents a 'significant issue of law' or an issue of 'widespread' or 'public interest' [citations]." (*California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929.) Both conditions are satisfied here. As noted above, this case "presents a 'significant issue of law.'"

8

(*Ibid.*) And this court's issuance of an order to show cause in October 2023 "determined, in effect, that [the Cohens'] remedy at law was inadequate." (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 476.)

Next, the Schwartzes contend we "lack[ ] jurisdiction to order the superior court to disregard *Riley*." We reject their argument as unsupported by the authority on which it relies. The cases they cite establish: (1) when faced with conflicting appellate court opinions, trial courts "must make a choice between the conflicting decisions" (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456); and (2) "'[a] decision by a court of appeal is not binding in the courts of appeal[,]'" and therefore "'[o]ne district or division may refuse to follow a prior decision of a different district or division . . . .'" (*McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 315, fn. 4; *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193 [noting "there is no horizontal stare decisis in the California Court of Appeal"].) These authorities do not—as the Schwartzes contend—demonstrate we lack jurisdiction to revisit and/or disagree with *Riley*. Courts of Appeal, and divisions thereof, are empowered to reconsider—and in the appropriate case disapprove of or overrule—prior decisions of those courts. (See, e.g., *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 [overruling decision by prior panel of the same court after determining the decision "wrongly interpreted the term 'mismanagement' [under former Probate Code section 521] for purposes of removing a personal representative of an estate"]; *Saucedo v. Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309, 310-311 [overruling a decision by a prior panel of the same court after determining the decision was wrongly decided].)

### C.    Conclusion

For the reasons discussed above, we deny the Schwartzes' motion to dismiss the writ petition.[4] We now turn our attention to the merits of the Cohens' petition.

## II.    Standard of Review

"'The standard of review for an order overruling a demurrer is de novo. The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled. [Citation.]' [Citations.] We liberally construe the pleading with a view to substantial justice between the parties. [Citations.] We do not, however, assume the truth of the legal contentions, deductions or conclusions; questions of law, such as the interpretation of a statute, are reviewed de novo." (*Ralphs Grocery Co. v. Superior Court* (2003) 112 Cal.App.4th 1090, 1096, overruled on other grounds in *Prachasaisoradej v. Ralphs Grocery Co., Inc.* (2007) 42 Cal.4th 217, 244.)

## III.    Reasons to Reexamine *Riley*

Well-settled principles govern the respect accorded prior opinions published by this court. "It is, of course, a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, 'is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to

---

4      In light of this ruling, we deny as moot the City Amici's motion for leave to file opposition to the motion to dismiss.

regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law.'" (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 (*Moradi-Shalal*).) At least in California, this is especially true of judicial decisions establishing important constitutional rights upon which residents rely to protect their interests or those of others.

"It is likewise well established, however, that the foregoing policy is a flexible one which permits this court to reconsider, and ultimately depart from, our own prior precedent in an appropriate case." (*Moradi-Shalal, supra,* 46 Cal.3d at p. 296.) "Although the doctrine [of stare decisis] does indeed serve important values, it nevertheless should not shield [all] court-created error from correction." (*Cianci v. Superior Court* (1985) 40 Cal.3d 903, 924.) Accordingly, "in appropriate and rare cases, appellate court precedent is open for reexamination and critical analysis." (*In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409.) After reexamination and analysis, a Court of Appeal can disapprove of its prior opinion reflecting judicial error. (See *People v. Yeats* (1977) 66 Cal.App.3d 874, 879 [Court of Appeal admitting error in and disapproving of one of its prior published opinions].)

With these principles in mind, we turn to *Riley* and consider whether to revisit its holding relating to section 36900, subdivision (a). In *Riley*, the plaintiff alleged the defendants, who were hotel operators, ran a vehicle parking facility within the meaning of Beverly Hills Municipal Code (BHMC) section 4-4.201(b), and charged a fee for parking, but failed to display signs showing the rates and fees to be charged as required by BHMC sections 4-4.202 and 4-4.206. (*Riley, supra,* 100 Cal.App.4th at p.

11

602.) At the time the plaintiff filed her complaint, BHMC section 4-4.201(b) defined "'vehicle parking facility'" as "'an off-street facility used for the parking of motor vehicles.'" (*Ibid.*)

While the case was pending, in May 2001, the Beverly Hills City Council amended BHMC section 4-4.201(b) to read: ""'Vehicle parking facility' shall mean an off-street parking facility, where the primary use of the property is to accommodate the parking of motor vehicles by members of the public. A vehicle parking facility does not include an off-street parking facility that accommodates the parking of motor vehicles by the occupants, customers, clientele, and employees of an on-site or adjacent structure where the primary use of that structure is for office, retail or hotel purposes.'" (*Riley*, *supra*, 100 Cal.App.4th at p. 602.) Ultimately, the trial court granted the defendants' motion for judgment on the pleadings and entered judgment in their favor. (*Id.* at p. 603.) It reasoned as follows: (1) the 2001 version of BHMC section 4-4.201 effected a change in the law, but was intended by the City Council to apply retroactively; (2) the operative complaint alleged the defendants were liable solely based on their violations of BHMC section 4-4.202 and 4-4.206; and (3) since defendants did not operate a "vehicle parking facility" within the amended version of BHMC section 4-4.201, they owed no duty under sections 4-4.202 and/or 4-4.206. (*Riley,* at p. 603.)

In reversing the judgment, the *Riley* decision first analyzed whether the 2001 amendment to BHMC section 4-4.201(b) was a clarification of existing law or a substantive change in the law. (*Riley*, *supra*, 100 Cal.App.4th at p. 603.) After considering the language used in the original version of the ordinance enacted in 1962, along with its legislative history and relevant caselaw, the

12

opinion held the 2001 version of BHMC section 4-4.201(b) amounted to a substantive change in the law. (*Riley,* at pp. 604-605.)

Next, the *Riley* opinion addressed whether the City Council intended the 2001 version of BHMC section 4-4.201(b) to apply retroactively. (*Riley*, *supra*, 100 Cal.App.4th at p. 606.) Based on the language of the new ordinance and its history, the decision held that the trial court erred by finding the ordinance applied retroactively. (*Id.* at p. 607.)

Finally, the *Riley* decision considered the defendants' argument "that a separate basis for affirmance [of the judgment entered in their favor] is the absence of a private right of action under the Municipal Code." (*Riley*, *supra*, 100 Cal.App.4th at p. 607.) On this point, the defendants argued "[t]he comprehensive regulatory scheme for violations of the Municipal Code . . . indicates the Council's intent to occupy the enforcement field to the exclusion of private lawsuits." (*Ibid.*) The opinion rejected this argument, explaining, in full: "However, Government Code section 36900, subdivision (a), expressly permits violations of city ordinances to be 'redressed by civil action.' Both our Constitution and the Government Code prohibit giving effect to city ordinances in conflict with state law. (Cal. Const., art. XI, § 7; Gov. Code, § 37100.) Defendants refer us to no law that allows a city to abrogate the right of redress created in the Government Code. We decline to read into the Municipal Code an intent to create an impermissible conflict with state law by abrogating the right to a civil action created by the Government Code." (*Riley,* at p. 607.)

Having reviewed *Riley*, we agree with the Cohens that its interpretation of section 36900, subdivision (a) should be reexamined. The decision's perfunctory recognition of a private

13

right of action under the statute is untethered to reasoned analysis applying principles of statutory construction. (See *Riley*, *supra*, 100 Cal.App.4th at p. 607.) Instead, without explanation, the opinion concludes the phrase "'redressed by civil action'" as used in the second clause of the statute's second sentence means that all members of the public may file suit under the statute. When interpreting that phrase, the opinion did not discuss the context in which it appears and, consequently, did not address the ambiguity in the statute regarding whether the Legislature assigned a right to file suit only to city authorities, or afforded that right to all private litigants seeking redress for another's violation of an ordinance.[5] (See *ibid.*)

In addition, it is unclear to what extent, if any, the parties in *Riley* briefed or otherwise addressed the existence of a private right of action under section 36900, subdivision (a). (See *Riley*, *supra*, 100 Cal.App.4th at p. 607.) So far as we can tell, the defendants did not discuss section 36900, subdivision (a) at all when asserting "the absence of a private right of action under the Municipal Code." (See *Riley,* at p. 607.) Nor is there any indication the *Riley* court considered legislative history, including legislative history wholly inconsistent with the court's holding.

Further, we acknowledge that, when deciding whether to revisit an opinion construing a statute, "questions of reliance are often crucial." (*People v. Latimer* (1993) 5 Cal.4th 1203, 1213.) This is because "[p]arties, society, and legislative bodies may act in reliance on a particular statutory interpretation" and, therefore, "overruling that interpretation might have undesirable consequences not present at the time of the original decision."

---

5      We explain the ambiguity in the statute's plain language in section IV.B.1 below.

14

(*Ibid.*) Accordingly, "'[s]tare decisis has added force when the [L]egislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response.'" (*Id.* at pp. 1213-1214 (italics omitted).)

These principles do not justify adherence to stare decisis in this case, however, as *Riley* has not been widely relied upon since its publication 22 years ago. So far as we can tell, between all federal and state courts, *Riley* has only been cited in 20 decisions. Of those decisions, only two are published California appellate court opinions adopting *Riley*'s interpretation of section 36900, subdivision (a). (See *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1181, fn. 10; see also *Huntingdon Life Sciences Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1263-1264.) Both opinions accept *Riley*'s recognition of a private right of action without question, and do not comment upon the holding's supporting analysis (or lack thereof). (*Ibid.*) And the parties do not cite, nor could we locate, any evidence or authority demonstrating the Legislature has considered, let alone relied upon, *Riley*'s interpretation of the statute.

"Stare decisis plays a vitally important role in our work as a common law court; the policy of adherence to precedent ensures the certainty, stability, and predictability on which the rule of law depends. But stare decisis concerns have no real place here. The doctrine 'does not "'shield court-created error from correction'"' but 'permits us "to reconsider and ultimately depart from, our own prior precedent in an appropriate case."' [Citation.] Here, none of the factors . . . identified as relevant to the question

15

of adherence to precedent—including 'the age of the precedent, the nature and extent of public and private reliance on it, and its consistency or inconsistency with other related rules of law' [citation]—suggests we are bound to preserve an [erroneous or unworkable precedent.]" (*People v. Hardin* (2024) 15 Cal.5th 834, 850.)

Accordingly, we conclude this is an "appropriate and rare case[ ]" to subject a prior opinion to "reexamination and critical analysis" (*In re Marriage of Shaban*, *supra*, 88 Cal.App.4th at p. 409), and thereby revisit whether a private right of action exists under section 36900, subdivision (a).

## IV. Section 36900, Subdivision (a) Does Not Create a Private Right of Action to Enforce City Ordinances

### A. General Principles and Analytical Framework

In *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592 (*Lu*), our Supreme Court summarized the two-part analytical framework governing the question whether a private right of action exists under a statute. Relying heavily on its prior decision in *Moradi-Shalal*, *supra*, 46 Cal.3d 287, the *Lu* court stated: "[W]hether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute. [Citations.] Such legislative intent, if any, is revealed through the language of the statute and its legislative history." (*Lu*, *supra*, at p. 596.)

In discerning the Legislature's intent, courts first examine the statutory language to determine whether it "contain[s] '"clear, understandable, unmistakable terms,"'" which strongly and directly indicate that the Legislature intended to create a private cause of action." (*Lu*, *supra*, 50 Cal.4th at p. 597.) On this point, the Supreme Court explained: "For instance, the statute may

16

expressly state that a person has or is liable for a cause of action for a particular violation. [Citations.] Or, more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action." (*Ibid*, fn. omitted.) If the statute is ambiguous and "does not include explicit language regarding a private cause of action," courts then "look to [its] legislative history for greater insight." (*Id.* at p. 598.)

Preliminarily, the Schwartzes contend *Lu* and *Moradi-Shalal* do not apply here because those cases addressed the existence of a private right of action to enforce a statute, whereas they seek to enforce city ordinances. We reject this contention because it merely points out a distinction without a difference. As noted above, the Schwartzes' complaint relies on section 36900, subdivision (a), along with *Riley*'s interpretation of the statute, to seek redress for the Cohens' maintenance of their hedges and landscaping in alleged violation of the LAMC.[6] Thus, the ultimate question in this case is whether section 36900, subdivision (a)— i.e., a statute—permits the Schwartzes to pursue their claims for damages and injunctive relief in court. Our Supreme Court addressed questions of precisely that nature in *Lu* and *Moradi-Shalal*. (*Lu, supra,* 50 Cal.4th at p. 596 [addressing "whether [Labor Code] section 351 gives employees a private right of action" (fn. omitted)]; *Moradi-Shalal, supra,* 46 Cal.3d at p. 292

---

6      For the first time in the original proceedings in this court, the Schwartzes contend they need not rely on section 36900 to assert their claims based on the Cohens' alleged violations of the LAMC. Specifically, they assert "California law has long held a private person who suffers identifiable harm by reason of a violation of a municipal zoning law may sue the violator, including seeking injunctive relief." We address their arguments on this point in section V below.

17

[reexamining whether Insurance Code section 790.03, subdivision (h) created a private right of action against insurers].) Accordingly, the analytical framework employed in those cases applies here.

### B.  Analysis

#### 1.  Plain Language

We begin our analysis with the relevant statutory language. Section 36900, subdivision (a) states, in full: "Violation of a city ordinance is a misdemeanor unless by ordinance it is made an infraction. The violation of a city ordinance may be prosecuted by city authorities in the name of the people of the State of California, *or redressed by civil action.*" (Italics added.)

The Schwartzes contend section 36900, subdivision (a) unambiguously reflects the Legislature intended to authorize a private right of action by members of the public. In support of their position, they repeatedly emphasize that while the first clause of the statute's second sentence expressly states "city authorities" may prosecute violations of ordinances, the second clause does not likewise mention "city authorities" when specifying those violations may also be "redressed by civil action." According to the Schwartzes, the Legislature's omission of any reference to "city authorities" in the second clause unequivocally demonstrates it did not intend to restrict the right to sue under the statute to those authorities. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117 ["Where different words or phrases are used in the same connection in

different parts of a statute, it is presumed the Legislature intended a different meaning"].)[7]

Even assuming, *arguendo*, the Schwartzes' interpretation of the statute is reasonable, it does not render unreasonable or otherwise foreclose the Cohens' proffered interpretation. On this point, the Cohens argue—and we agree—that when read in context with the statute's first sentence and the first clause of the second sentence, which collectively grant "city authorities" the right to prosecute the violation of an ordinance as a misdemeanor, the second clause of the second sentence could reasonably be interpreted as affording only those same authorities the right to utilize civil lawsuits as an alternative enforcement mechanism. (See § 36900, subd. (a).)

---

7       The Schwartzes also rely on two other principles of statutory construction to contend section 36900, subdivision (a) creates a private right of action. Under the first principle, known as the last antecedent rule, "'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.'" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680.) The second principle, known as *expressio unius est exclusio alterius*, "means that 'the expression of certain things in a statute necessarily involves exclusion of other things not expressed . . . .'" (*Center for Community Action & Environmental Justice v. City of Moreno Valley* (2018) 26 Cal.App.5th 689, 699.) Neither of these principles apply here. In interpreting section 36900, subdivision (a), we are not determining the application of any qualifying words to certain preceding phrases. And, nowhere in the statute did the Legislature expressly identify the individuals to whom it granted the right to seek redress by civil action, and thereby exclude all others not mentioned.

The Cohens' interpretation of the statute is supported by principles of interpretation governing clauses "written in the 'passive voice.'"(*Coso Energy Developers v. County of Inyo* (2004) 122 Cal.App.4th 1512, 1524 (*Coso*).) Specifically, where, as here, the drafter of a sentence identifies the actor in the first clause, but uses the passive voice in the next clause, and therefore does not identify the actor to whom that clause applies, "[i]t is reasonable to infer that the undisclosed actor in the second clause is the same actor specified in the first; the lack of disclosure in the second instance can be attributed to the desire to avoid redundancy." (*Id.* at p. 1525.) Applying this principle to the second sentence of section 36900, subdivision (a), it is reasonable to infer the "city authorities"—i.e., the sole actors referenced in the sentence's first clause—are the same individuals entitled to "redress[ ] [the violation of a city ordinance] by civil action" by way of the second clause. Further, it is reasonable to infer that, having specified "city authorities" as the actors in the first clause, the Legislature did not re-identify those same actors in the next clause to avoid being "unnecessarily repetitive" (*Coso*, at p. 1525), and did not intend to grant all citizens the right to file suit.

For the reasons discussed above, we conclude section 36900, subdivision (a) does not "contain "'clear, understandable, unmistakable terms,'" which strongly and directly indicate that the Legislature intended to create a private cause of action." (*Lu*, *supra*, 50 Cal.4th at p. 597.) Instead, the statutory language is ambiguous, as it is "'susceptible to more than one reasonable interpretation.'" (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495.) We therefore turn to section 36900's legislative history "for greater insight." (*Lu*, at p. 598.)

### 2.  Legislative History[8]

Section 36900, subdivision (a) derives from sections 769 and 867 of the Municipal Incorporation Act of 1883.[9] (60 Ops.Cal.Atty.Gen. 83, at *4 (1977).) Section 769 stated, in relevant part: "The violation of any ordinance of such city shall be deemed a misdemeanor, and may be prosecuted by the authorities of such city in the name of the people of the State of California, or may be redressed by civil action, *at the option of said authorities*." (Stats. 1883, ch. 49, § 769, p. 256, italics added.) Section 867 likewise provided, in pertinent part: "The violation of any ordinance of such city or town shall be deemed a misdemeanor, and may be prosecuted by the authorities of such city or town in the name of the people of the State of California, or may be redressed by civil action, *at the option of said authorities*." (Stats. 1883, ch. 49, § 867, p. 272, italics added.)

In other words, section 36900's predecessor statutes explicitly granted only city authorities—rather than all members of the public—the right to enforce violations of local ordinances by filing suit. These predecessor statutes contained the same language verbatim when Senate Bill No. 750 (SB 750), the bill adding section 36900 to the Government Code, was introduced in January 1945. (See Stats. 1905, ch. 74, § 1, p. 72; see also Stats. 1933, ch. 516, § 20, p. 1332.)

---

8  We grant the Cohens' first request for judicial notice and their supplemental request for judicial notice. Likewise, we grant the Schwartzes' amended request for judicial notice. However, we deny the Cohens' final motion for judicial notice for failure to demonstrate relevance.

9  We refer to these predecessor statutes as section 769 and section 867, respectively.

21

SB 750 was drafted by the California Code Commission[10] (the Commission) at the Legislature's direction. Among other provisions, SB 750 added section 36900 as part of Title 4 to the Government Code "to consolidate and revise the law relating to the organization, operation, and maintenance of a system of state and local government . . . ." In so doing, SB 750 consolidated section 867 with section 769 and revised the relevant language to read as follows: "Violation of a city ordinance is a misdemeanor. Such violation may be prosecuted by city authorities in the name of the people of the State of California, or may be redressed by civil action." In other words, by way of SB 750, the Legislature (per the Commission's recommendation) deleted the phrase "at the option of said authorities" from the clause specifying violations of ordinances may be "redressed by civil action."

From the time it was drafted to its enactment, the Commission and other officials involved in the process consistently, and repeatedly, avowed SB 750 was not intended to make any substantive changes to existing law. At the outset, in its report to the Governor and the Legislature transmitted on January 1, 1949, the Commission noted it prepared Title 4 of the Government Code for enactment in 1949 to "codif[y] the laws relating to municipal corporations," and that it has suggested substantive changes to existing law more than once in the past. For the 1949 legislative session, however, the Commission stated:

---

10  Created in 1929, the Commission was directed by the Legislature to "revise all the laws of the State." Among other duties, it was tasked with "[t]he codification, consolidation, compilation, or revision of all statutes in force" and "[t]he suggestion of . . . substantive changes in the existing law as may be deemed proper."

"*[N]o comprehensive substantive revision has been attempted*, due to the priority which the commission has given to the codification program. The commission believes that *a restatement of existing law in clearer form* will serve to call attention to many inequities and irregularities of a substantive nature, and result in their correction by other interested parties." (Italics added.)

Similarly, in a report dated April 14, 1949, the Office of the Legislative Counsel noted SB 750 "[a]dds Title 4 and Sections 500041 to 500045, inclusive, to the Government Code, relating to the organization, operation, and maintenance of a system of city government." Following its approval of the bill's form, title, and constitutionality, the report analyzed SB 750 as follows: "This bill, prepared by the California Code Commission, assembles, codifies, and consolidates the law relating to cities and, if approved, will constitute Title 4 of the Government Code. [¶] *It makes no substantive changes in existing law, but rearranges and restates in simplified language the substance of existing laws,* and repeals obsolete and superseded statutes." (Italics added.)

Consistent with these reports, the Attorney General stated in a memorandum to the Governor dated April 14, 1949: "Senate Bill No. 750 adds Title 4 to the Government Code, codifying the law relating to the government of cities. We have not compared each provision of Senate Bill No. 750 with the repealed acts specified therein in detail, *but a careful sampling indicates that there are no substantive changes in the law. Senate Bill No. 750 was prepared by the California Code Commission, which has informed us that to the best of their knowledge no substantive changes were made*." (Italics added.)

In a letter to the Governor dated April 18, 1949, the Secretary of the Commission addressed the proposed revisions to

23

the Government Code. With respect to SB 750, the Secretary stated: "Senate Bill 750 is a codification and consolidation of the laws relating to the government of cities, placing the various provisions of law relating to these matters in Title 4 of the Government Code." Then, after briefly describing the other bills before the Governor, the Secretary stated: "It is the belief of the California Code Commission that these codifications will render numerous acts more readily accessible than they now are in the various scattered acts. While Titles 4 and 5 are *mainly restatements of the laws relating to cities and local agencies*, many obsolete and superseded acts are repealed. *No substantive change in the existing law is made in any of these bills.*" (Italics added.)

Subsequently, in a legislative memorandum dated April 22, 1949, Legislative Secretary Beach Vasey described SB 750 to the Governor as follows: "Adds new title to the Government Code relating to the organization, operation, and maintenance of city governments. Codification bill prepared by the California Code Commission and *making no substantive changes in existing law.*" (Italics added.) After briefly summarizing the reports by the Office of the Legislative Counsel and Attorney General discussed above, the memorandum recommended SB 750's approval "as a further step in the long process of codification of State statutes, *making no substantive changes in existing law.*" (Italics added.)

Finally, after SB 750 was enacted, the Legislature confirmed the bill did not make any substantive changes to existing law. The Legislative Counsel's Digest of Statutes Enacted in the 1949 Regular Session described SB 750 as follows: "Assembles, codifies, and consolidates law relating to city government *without change in legal effect.*" (Italics added.) That the Summary Digest does not state or otherwise suggest the

24

statutes enacted by SB 750, including section 36900, created a private right of action "is a strong indication the Legislature never intended to create such a right of action." (*Moradi-Shalal, supra*, 46 Cal.3d at p. 300.)

The City Amici observe—and the Schwartzes do not appear to dispute—the widespread invocation of a private right of action under section 36900, subdivision (a) could profoundly affect cities in this state. The Amici explain: "[C]ities would lose their ability to monitor and influence courts' interpretation of their ordinances once enacted. Self-interested private parties could seek to enforce ordinances in whatever fashion suited [to] their purposes in that litigation. Outside a city's knowledge or participation, unskilled or underrepresented defendants lacking legislative history or context could default or even lose cases (including facial challenges to ordinances), thus potentially creating legal precedent binding on the city in all cases involving that local law. Courts could rule on arguments about ordinances without input from the city that enacted them. This result would also eliminate prosecutorial discretion, as any private party could choose to proceed with the civil enforcement of any ordinance."

In sum, the relevant legislative history shows section 36900, subdivision (a)'s predecessor statutes afforded only city authorities the right to redress violations of ordinances by way of civil action. Through SB 750, the Legislature consolidated those statutes and revised their language. In so doing, it removed the phrase specifying violations of ordinances could be redressed by civil action "at the option of [city] authorities." By making these revisions, however, the Legislature only sought to consolidate, codify, and restate existing law. It did not intend to make any substantive changes to laws then in effect. For these reasons, we

reject the contention that, by enacting section 36900, subdivision (a), the Legislature intended to recognize a private right of action as a new, alternative means of enforcing city ordinances. Instead, we conclude the Legislature removed the phrase "at the option of said authorities" from the clause stating violations of ordinances may be "redressed by civil action" to simplify the statutory language and avoid unnecessary repetition. (See *Coso*, *supra*, 122 Cal.App.4th at p. 1525.) It intended no change in meaning.

### 3.    Public Policy

We acknowledge that, in addition to their arguments based on statutory language and legislative history, the Schwartzes assert their proffered interpretation of section 36900, subdivision (a) should be adopted because it is supported by public policy. Specifically, they contend private parties should be allowed to file suit under the statute because city authorities cannot be relied upon to enforce violations of ordinances due to their limited resources and the potential for abuse of prosecutorial discretion. They also assert that allowing citizens to file suit will "encourage compliance with the law" and more efficiently redress violations of ordinances when they occur.

These arguments are unavailing for two reasons. First, they have been forfeited because they are unsupported by citations to evidence or legal authority. (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 629.) Second, and more important, the Schwartzes misunderstand our role as a reviewing court. "Our role here is to interpret the statute [as written], not to establish policy. The latter role is for the Legislature." (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1140.) Thus, their policy arguments are "best directed to the Legislature,

26

which can study the various policy and factual questions and decide what rules are best for society." (*Ibid.*)

### 4. Conclusion

The language of section 36900, subdivision (a) is ambiguous with respect to who may redress violations of city ordinances "by civil action." Having reviewed the pertinent legislative history, however, we conclude the Legislature did not intend to afford members of the public the right to bring suit to redress violations of local ordinances. Rather, the legislative history reveals that, when enacting section 36900, subdivision (a), the Legislature sought to restate and simplify existing law granting only city authorities the right to redress violations of ordinances, either through criminal prosecutions or by filing civil suits.

For these reasons, we hold section 36900, subdivision (a) does not authorize a private right of action. To the extent *Riley* held to the contrary, it is overruled.[11]

## V. The Schwartzes' Argument on Caselaw Recognizing a Private Right of Action

Finally, the Schwartzes argue that, even if section 36900, subdivision (a) does not create a private right of action, they can still pursue their claims based on the Cohens' alleged violations of the LAMC because "California decisional law has repeatedly held that a private citizen can seek to enforce violations of local ordinances under certain circumstances."

---

11    In addition, to the extent they relied on *Riley* to recognize a private right of action under section 36900, subdivision (a), we disapprove of and decline to follow *Amaral v. Cintas Corp. No. 2*, *supra*, 163 Cal.App.4th at p. 1181, fn. 10, and *Huntingdon Life Sciences Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, *supra*, 129 Cal.App.4th at pp. 1263-1264.

27

The authorities cited by the Schwartzes establish that an individual may file suit based on another's violation of an ordinance when he or she: (1) "suffers a 'special injury to himself in person or property of a character different in kind from that suffered by the general public'"; or (2) "is a 'member of the community for whose particular welfare the ordinance was enacted.'" (*Pacifica Homeowners' Assn. v. Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1152-1153.) In other words, where either of these criteria are met, the violation of a local ordinance may be relevant to, and may even satisfy an element of, a claim other than one based on section 36900, subdivision (a), such as a public nuisance claim. (See, e.g., *Sapiro v. Frisbie* (1928) 93 Cal.App. 299, 305-306 ["where a right is given by . . . municipal ordinance to a particular class of persons for their special protection, and not merely for the protection of the public at large, a liability is thereby created in favor of any such particular class against any person who violates such right and as a result injures the person or property of the former, which liability may be enforced by means of civil action"]; *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 939-940 ["a private person who suffers identifiable harm by reason of a violation of a municipal zoning law may sue the violator for compensatory damages and may also seek injunctive relief when applicable"]; *Castillo v. Friedman* (1987) 197 Cal.App.3d Supp.6 14 [violations of city ordinances are actionable by "'any injured member of the public for whose benefit the [ordinance] was enacted'"]; *Major v. Silna* (2005) 134 Cal.App.4th 1485, 1498-1499 ["courts have generally permitted a citizen to enjoin violations of local ordinances only when the violations work a special injury on the citizen"]; *McIvor v. Mercer-Fraser Co.* (1946)

76 Cal.App.2d 247, 250, 254 [affirming judgment in favor of plaintiffs who adequately alleged defendants' excavation of their property in violation of a city zoning ordinance caused several identifiable injuries to plaintiffs and their property].)

The complaint, however, does not allege any facts showing the Schwartzes satisfy either of the requisite criterion. Indeed, in sustaining the Cohens' demurrer to the first cause of action, the trial court effectively found the Schwartzes did not satisfy the first criterion, as they "fail[ed] to allege specific facts describing how [the Cohens'] conduct has compromised [their] ability to use their property." And, while they were given leave to amend to cure this defect in their nuisance claim, they chose not to reassert it in their first amended complaint. Further, nowhere in their three briefs filed in opposition to the Cohens' petition have the Schwartzes specified what facts, if any, they could allege to establish they meet either of the requisite conditions to fall within the purview of the cases they have cited.[12]

In sum, we conclude the Schwartzes have not shown they have been authorized by caselaw or by statute to pursue their claims based on the Cohens' alleged violations of the LAMC. Thus, the trial court erred by overruling the demurrer to the second and third causes of action asserted in the complaint.

---

12    For this reason, we conclude the Schwartzes have already had the opportunity to "bolster their allegations of 'special injury' or 'particular welfare'" sought in their return and deny their request for leave to "amend their complaint in light of this [c]ourt's decision" to overrule *Riley*.

29

## DISPOSITION

Let a peremptory writ of mandate issue lifting the stay in the respondent court and ordering that court to: (1) vacate the portion of its June 1, 2023 order overruling petitioners' demurrer to the second and third causes of action asserted in respondents' original complaint filed May 19, 2022; and (2) enter an order sustaining petitioners' demurrer to the second and third causes of action without leave to amend. Petitioners are awarded their costs for this original proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

**CERTIFIED FOR PUBLICATION**

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.

30